1   MARK B. HANSON, ESQ.
    Second Floor, Macaranas Building
2   Beach Road, Garapan
    PMB 738 P.O. Box 10,000
3   Saipan, Mariana Islands 96950
    Telephone:     (670) 233-8600
4   Facsimile:     (670) 233-5262
    E-Mail Address:     mark@saipanlaw.com
5
    Attorney for *Plaintiff*
6

**FILED**
Clerk
District Court

AUG 10 2009

For The Northern Mariana Islands
By_____
(Deputy Clerk)

7               IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN MARIANA ISLANDS

8   MOHAMMAD FEROJ AHMED,                  )   CASE NO. CV 09 — 00 26
                                           )
9                          Plaintiff,      )
                                           )
10          vs.                            )
                                           )   COMPLAINT
11  GREGORY BAKA, Acting Attorney General and )
    MELVIN GREY, Director of Immigration, in their )   DEMAND FOR JURY TRIAL
12  official and individual capacities,    )
                                           )
13                         Defendants.     )
                                           )
14                                         )

15                          I. JURISDICTION

16      1. Plaintiff brings this action for monetary damages under 42 U.S.C. §§ 1983, 1985 and

17  1986 for Defendants' willful and malicious violations of and conspiracy to violate Plaintiff's

18  First Amendment right to free speech and Plaintiff's Fifth and Fourteenth Amendment rights

19  to due process and equal protection of laws.

20      2. Jurisdiction over this matter is vested in this Court pursuant to 28 U.S.C. §1343

21  (a)(deprivation of rights) and 28 U.S.C. §1331 (general federal question jurisdiction).

22      3. Venue is invoked pursuant to 28 U.S.C. §1391. Venue is properly placed in the

23  United States District Court for the Northern Mariana Islands in that all the parties reside in

24  the Commonwealth of the Northern Mariana Islands.

25                          II. PARTIES

26      4. Plaintiff Mohammad Feroj Ahmed (Mr. "Ahmed") is an individual residing in

27  Saipan, Commonwealth of the Northern Mariana Islands.

28

5.     Defendant Gregory Baka ("Baka") is an individual residing in Saipan, Commonwealth of the Northern Mariana Islands and was, at times relevant to Mr. Ahmed's claims herein, the Acting Attorney General for the Commonwealth of the Northern Mariana Islands.

6.     Defendant Melvin Grey ("Grey") is an individual residing in Saipan, Commonwealth of the Northern Mariana Islands and was, at times relevant to Mr. Ahmed's claims herein, the Director for the Division of Immigration, Commonwealth of the Northern Mariana Islands.

7. All acts and omissions of Defendants alleged herein were acts or omissions of Defendants acting within the scope of their official duties as officials of the Commonwealth of the Northern Mariana Islands, its agencies and instrumentalities and/or in conspiracy with said officials.

8. All acts and omissions of Defendants alleged herein were acts or omissions of Defendants acting under color of state law and/or in conspiracy with Commonwealth officials acting under color of state law.

9. All claims against Defendants herein are claims against Defendants in the official and individual capacities.

### III.   FACTS

10. Mr. Ahmed arrived in the Commonwealth of the Northern Mariana Islands (the "Commonwealth") in October 1996 as an alien contract worker.

11. Mr. Ahmed has resided in the Commonwealth since his arrival in 1996.

12. As a foreign national, Mr. Ahmed has, at all times, maintained his legal immigration status in the Commonwealth.

13. Beginning in about 1998, Mr. Ahmed was actively involved in various workers rights movements in the Commonwealth.

14. As a founding member and an officer of the United Workers Alliance — a alien worker rights group formed in 1998 by a group of disenfranchised guest workers — Mr. Ahmed

was outspoken on issues of labor abuses and human rights violations occurring in the Commonwealth. Mr. Ahmed was critical of Commonwealth officials' policies with regard to the recruitment and hiring of alien workers from abroad, of Commonwealth officials' lack of attention to the plight of contract workers brought to the Commonwealth to work, and of Commonwealth officials' failure to enact and to enforce Commonwealth laws and regulations protecting the rights of alien workers.

15. Through his work with the United Workers Alliance, Mr. Ahmed met with various United States Congressional delegations that visited the Commonwealth and discussed with congressmen and their staffers the concerns of alien contract workers in the Commonwealth and the Commonwealth government's failure to protect contract workers' rights.

16. During the same period of time, Mr. Ahmed met with various Federal officials to discuss the myriad of labor and employment abuses faced by contract workers in the Commonwealth and the deficiencies in the enforcement of labor and employment laws intended to protect the workers' rights.

17. In 1999, Mr. Ahmed was interviewed by a reporter from *The New York Times* and that interview of Mr. Ahmed discussing rampant illegal recruitment of foreign labor and egregious labor abuses in the Commonwealth appeared in the *The New York Times Magazine* later that year.

18. In March 2000, Mr. Ahmed accepted a position with the newly created Federal Ombudsman's Office in the Commonwealth as a caseworker and translator assisting alien workers with labor and employment related grievances against their Commonwealth employers.

19. Mr. Ahmed continues to be employed with the Federal Ombudsman's Office and continues to assist aggrieved guest workers with labor disputes against their present and former Commonwealth employers.

20. For many years, the Federal Ombudsman has been critical of the policies and procedures at the Commonwealth Department of Labor and the officials of both the

Department of Labor and the Division of Immigration, particularly relating to the Department's handling of labor grievances of alien workers, the stereotyping of categories of labor grievances as fraudulent or frivolous, and the Department's continuing denial of alien workers' rights to due process.

21. The Federal Ombudsman, for which Mr. Ahmed works, has been critical of policies practices of the Division of Immigration related to, among other things, the continued recruitment practices of off-island alien labor by Commonwealth employers notwithstanding the growing numbers of unemployed alien workers present in the Commonwealth pursing wage claims and other violations of law of their former Commonwealth employers.

22. By emergency regulation published in the *Commonwealth Register* on January 22, 2004, Vol. 26, No. 1 at page 21523 to 21525 and adopted with amendments on March 23, 2004, *Commonwealth Register* Vol. 26, No. 3 at page 22170 to 22174, the Commonwealth Attorney General added a new Section 804 of the Commonwealth Immigration Regulations (later codified at N.M.A.I.C § 5-40.1-715 then superceded by N.M.A.I.C. § 5-40.3-315) giving the Attorney General discretion to deny the issuance of entry permits to certain foreign nationals, citizens and residents from various countries and, *inter alia*, providing for waivers and exceptions from blanket country exclusions.

23. Since its adoption in March 2004, Bangladesh has been included on the excluded countries list by the Attorney General pursuant to § 804 of the Immigration Regulations.

24. On August 5, 2008, in the People's Republic of Bangladesh, Mr. Ahmed married Azmery Sultana who is a citizen of the People's Republic of Bangladesh.

25. Because Bangladesh is on the excluded list of countries by the Commonwealth Attorney General, on December 10, 2008, pursuant to § 804(C) of the Immigration Regulations, Mr. Ahmed applied to the Acting Attorney General, Defendant Baka, for an exemption for his new wife to enter the Commonwealth of the Northern Mariana Islands from Bangladesh.

26. After waiting almost two months for a response, on February 3, 2009, Mr. Ahmed

was summarily notified by Defendant Baka that his wife would not be granted a discretionary waiver under § 804(C) that would have allowed Mr. Ahmed's wife to enter the Commonwealth.

27. The reason stated in Defendant Baka's letter to Mr. Ahmed was that "it was not in the best interest of the Commonwealth that the exclusion be waived."

28. Defendant Baka did not attempt clarify why Azmery Sultana's request for a waiver was unacceptable, how the application was somehow deficient, nor how the interests of the Commonwealth would be adversely affected by her entry.

29. Defendant Baka did, however, attempt to justify in his letter why Bangladesh is on the excluded countries list in the first place — a justification having little to do with the particular facts of Azmery Sultana's waiver request or with Defendant Baka's purported justification for the denial of such a waiver in her case, *i.e.*, that it would not be in the best interest of the Commonwealth for Sultana to gain entry.

30. In his letter denying a § 804(C) waiver for Mr. Ahmed's wife, Defendant Baka makes further reference to the passage by the United States Congress of Public Law 110-229 on May 8, 2008 (the "federal takeover" legislation) as resulting from the Commonwealth's inability to manage its own immigration, and Baka somewhat insultingly and wholly irrelevantly suggests that Mr. Ahmed and his wife apply to the United States Department of State for a visa — a visa that would, presumably, allow Azmery Sultana to travel to the United States, but not necessarily to the Commonwealth.

31. Comments of the Director of Immigration, Defendant Grey, to Mr. Ahmed soon after the waiver denial clarified Defendant Baka's odd comments on federal takeover of Commonwealth immigration in his denial letter, shedding light on the actual basis of the denial of a § 804(C) waiver for Azmery Sultana — that Mr. Ahmed had been outspoken on the issue of workers' rights and federal takeover legislation both personally and through his work with the Federal Ombudsman's Office and that Mr. Ahmed was now being punished for his participation in causing the "federal takeover" of the Commonwealth's control over its borders.

32.  Defendant Grey's comments to Mr. Ahmed included: "The whole Federal Ombudsman's Office worked for the federalization and now the Federal government cannot address your problem?" "You are a part of that office, they wanted federal takeover and that happened, so the Federal government should take care of your problem."

33.  Echoing Defendant Baka's baseless denial of Azmery Sultana's entry based on the "best interests of the Commonwealth," Defendant Grey also stated that Ms. Sultana's entry was denied because "[her] presence is not a significant benefit for the CNMI. It's just a personal benefit, a family reunion," or words to that effect.

34.  Under the statutory and regulatory framework governing the entry of aliens to the Commonwealth and the discretion of the Attorney General related thereto, neither Baka's nor Grey's stated basis is a legitimate basis for the denial of a § 804(C) waiver.

35.  After the denial, Mr. Ahmed appealed to Defendant Baka to reconsider his waiver denial.

36.  In support of Mr. Ahmed's request, he provided Defendants with support letters from an Assistant United States Attorney, a Special Agent for the Federal Bureau of Investigation and an Investigator for the United States Department of Labor, in addition to presenting Defendants with certificates of appreciation given to Mr. Ahmed by the Governor of the Commonwealth, the Secretary of the Commonwealth Department of Labor and the Director of the Federal Bureau of Investigation for his past service to the public.

37.  To date, Defendant Baka has failed to respond to the appeal.

38.  Perhaps in an effort to find substantiation for the denial of a waiver where there was none, but what readily appeared to be further retaliation against Mr. Ahmed in any case, after Mr. Ahmed's appeal, Defendants Baka and Grey caused Assistant Attorney General Kathleen Busenkell to open an investigation into the veracity of the documents Mr. Ahmed submitted to prove the validity of his recent marriage to Azmery Sultana. Defendants suggested, rather publicly, that Mr. Ahmed's documentation was somehow fraudulent — a spurious allegation — in addition to Defendants making confusing comments to Mr. Ahmed

and possibly others about what they allege as Mr. Ahmed's "questionable attitude at Labor."

39. Additionally, during his employment with the Federal Ombudsman's Office, and likely factors contributing to the impetus for the retaliatory conduct of the Defendants described herein, Mr. Ahmed, and the Federal Ombudsman's Office for whom he worked, assisted in various matters including:

   a.   The filing of a labor complaint by an employee of Defendant Baka's wife Charlene Baka against Mrs. Baka for labor and employment abuses;

   b.   The filing of a labor complaint by an employee of Immigration Investigator John Peter against him for labor and employment abuses;

   c.   The instigation of a criminal probe into the criminal activities and improprieties of former Immigration Investigator Richard Lizama; and

   d.   The termination of Mei Lynch — the wife of Kevin Lynch, Chief Prosecutor and former attorney for the Division of Immigration — by the Federal Ombudsman's Office for potential criminal activity and other improprieties.

40. Notwithstanding the arguable illegality of § 804 of the Immigration Regulations in the first place,[1] the Defendants' actions described above, denying Mr. Ahmed's wife a § 804(C) waiver to allow her to enter the Commonwealth to be united with Mr. Ahmed, were no doubt in retaliation for, among other of Mr. Ahmed's constitutionally protected activities, Mr. Ahmed's long-standing vocal criticism of the plight of the contract workers in the Commonwealth, his criticism of the Commonwealth government's consistently abhorrent reaction to deteriorating labor and immigration problems, and his vocal support for "federal takeover."

41. Because of Defendants' retaliation against Mr. Ahmed, he has been denied the opportunity to be united with his new wife and he has suffered immeasurable emotional distress as a result.

---

[1] Immigration Regulations § 804 and its successor regulation N.M.A.I.C. § 5-40.3-315 both appear to be at odds with the Commonwealth Entry and Deportation Act with regard to "excludable aliens" as provided in 3 C.M.C. § 4322 and § 804 is most probably *ultra vires*.

IV.  CAUSE OF ACTION FOR VIOLATIONS
OF 42 U.S.C. § 1983
(First Amendment Retaliation)

42.  Mr. Ahmed repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 41 above with the same force and effect as if herein set forth.

43.  Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

44.  Mr. Ahmed engaged in constitutionally protected speech.

45.  Defendants' actions taken against Mr. Ahmed in retaliation for Mr. Ahmed engaging in constitutionally protected speech would chill an ordinary person from engaging in such speech.

46.  Defendants actions taken against Mr. Ahmed were motivated, at least in part, by Mr. Ahmed engaging in constitutionally protected speech.

47.  Defendants, and each of them, acting under color of state law and/or conspiring with those acting under color of state law, have caused Mr. Ahmed to be deprived of the constitutional rights guaranteed him by the First, Fifth and Fourteenth Amendments to the United States Constitution.

48.  As a result of Defendants' concerted, unlawful and malicious actions, Mr. Ahmed has been damaged by Defendants, and each of them, in an amount to be determined at trial.

V.  CAUSE OF ACTION FOR CONSPIRACY
IN VIOLATION OF 42 U.S.C. § 1985(3)
(Deprivation of Rights)

49.  Mr. Ahmed repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 48 above with the same force and effect as if herein set forth.

50.  Title 42 U.S.C. § 1985(3) provides, in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . .
>
> * * *
>
> if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

51. As described herein, each of the Defendants hereto entered into a plan — a conspiracy — to retaliate against Mr. Ahmed for engaging in the constitutionally protected speech described herein.

52. Defendants' purpose for their conspiracy was to retaliate against Mr. Ahmed and to deprive Mr. Ahmed of due process, equal protection, and the privileges and immunities guaranteed by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.

53. All acts and omissions of Defendants alleged herein were acts and omissions of Defendants acting under color of state law and/or in conspiracy with Commonwealth officials acting under color of state law.

54. Defendants have taken a substantial number of acts in furtherance of their conspiracy.

55. By conspiring for the purpose of retaliation against Mr. Ahmed for engaging in constitutionally protected free speech , Defendants have, thereby, deprived Mr. Ahmed of his rights, privileges, and immunities as guaranteed by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.

56. As a result of Defendants' concerted, unlawful and malicious conspiracy, Mr. Ahmed has been damaged by Defendants in an amount to be determined at trial.

# VI.  CAUSE OF ACTION FOR
## VIOLATIONS OF 42 U.S.C. § 1986

57.  Mr. Ahmed repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 56 above with the same force and effect as if herein set forth.

58.  Title 42 U.S.C. § 1986 provides, in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

59.  Defendants herein, and each of them, at times relevant and material to Mr. Ahmed's claims herein, brought pursuant to 42 U.S.C. § 1985, had knowledge of the conspiracy to retaliate against Mr. Ahmed for engaging in constitutionally protected free speech in order to further deprive Mr. Ahmed of his constitutional rights and, prior to various acts taking place, had knowledge that one or more of the Defendants intended to take acts that deprived Mr. Ahmed of his constitutional rights.

60. Defendants herein, and each of them, had the power, duty and authority to prevent or to aid in the prevention of the concerted acts of the Defendants that deprived Mr. Ahmed of his constitutional rights.

61.  As a result of the concerted unlawful and malicious conspiracy of Defendants, which conspiracy Defendants, and each of them, knew of the conspiracy, had the power to prevent the wrongs conspired to be done, and failed and refused to prevent the wrongs, Mr. Ahmed was deprived of due process of law and his right to equal protection, privileges and immunities of the laws and the due course of justice were impeded, all in violation of Mr. Ahmed's First, Fifth and Fourteenth Amendments rights under the United States Constitution.

62.  As a result of Defendants' failure to prevent and/or aid in the prevention of Defendants' concerted, unlawful and malicious conspiracy, Mr. Ahmed has been damaged by

Defendants in an amount to be determined at trial.

PRAYER FOR RELIEF:

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for:

1. actual, general, special, compensatory damages in the amount to be determined at trial;

2. punitive damages for Defendants' intentional, wanton and malicious conduct in an amount to be determined at trial;

3. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

4. Any other legal and equitable relief the Court deems just and proper.

DATED this 10th day of August, 2009.

MARK B. HANSON

Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738, P.O. Box 10,000
Saipan, MP 96950
Telephone:    (670) 233-8600
Facsimile:     (670) 233-5262
E-Mail Address:    mark@saipanlaw.com

Attorney for Plaintiff

1

DEMAND FOR JURY TRIAL

2    Pursuant to Fed. R. Civ. P. 58(b), Plaintiff hereby demands a trial by jury on all of

3 Plaintiff's causes of actions and claims for relief stated in the above-Complaint.

4

5    DATED this 10th day of August, 2009.

6

7                                                    MARK B. HANSON

8                                                    Second Floor, Macaranas Building
                                                     Beach Road, Garapan
9                                                    PMB 738, P.O. Box 10,000
                                                     Saipan, MP 96950
10                                                   Telephone:    (670) 233-8600
                                                     Facsimile:    (670) 233-5262
11                                                   E-Mail Address:    mark@saipanlaw.com

12                                                   Attorney for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28