Braddock J. Huesman, F#0367
Assistant Attorney General
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP 96950-8907
Telephone: (670) 664-2341
Fax: (670) 664-2349

Attorney for Defendants Gregory Baka, and Melvin Grey.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOHAMMAD FEROJ AHMED,<br><br>  Plaintiff,<br><br>vs.<br><br>GREGORY BAKA, Acting Attorney General, and MELVIN GREY, Director of Immigration, in their official and individual capacities,<br><br>  Defendants. | CIVIL ACTION NO. 09-0026<br><br>**DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**<br>**[FED. R. CIV. P. 12(b)(6)]**<br><br>Date: Oct 22, 2009<br>Time: 9:00 a.m.<br>Judge: Hon. Alex R. Munson |

LA/576564v1

-1-

## MOTION

Defendants Gregory Baka ("Mr. Baka"), and Melvin Grey ("Mr. Grey"), (collectively, the "Defendants") move to dismiss the Complaint of Plaintiff ("Mr. Ahmed") in the above-entitled action on the ground that Mr. Ahmed has failed to state a claim upon which relief can be granted. Defendants submit this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTS

Mohammad Feroj Ahmed ("Mr. Ahmed") is a married nonresident alien who is attempting to bring his wife, Azmery Sultana ("Ms. Sultana"), a native of Bangladesh, into the Commonwealth.

Mr. Ahmed, apparently, has a history of political activism in the CNMI. Specifically, Mr. Ahmed, from 1996-1999, spent time criticizing the CNMI government and advocating for better labor and employment conditions as they relate to nonresident workers.

In 2000, Mr. Ahmed took a position with the Federal Ombudsman's Office as caseworker and translator assisting alien workers with labor and employment related grievances against their Commonwealth employers. The Federal Ombudsman's Office has been critical of some policies and practices of the Division of Immigration. Mr. Ahmed, by all public reports, is an outstanding resident and employee.

In 2008, Mr. Ahmed married a citizen of Bangladesh. He sought to bring his new wife into the Commonwealth. Unfortunately, the Peoples' Republic of Bangladesh is a location from

LA/576564v1

-2-

which persons are excluded from entering the Commonwealth. In 2004, The Attorney General added a new Section 804 to the Commonwealth Immigration Regulations giving the Attorney General the discretion to "discontinue issuance of entry permits to the holders of passports issued by any country, …, if the Attorney General determines: (1) That the government of such country is unable to provide adequate information regarding backgrounds of persons embarking from that location[.]" By Plaintiff's own allegations, Bangladesh has been included on the list of countries excluded ("Exclusion List") since the Exclusion List's inception in 2004.

Mr. Ahmed, on behalf of his wife, asked for, but was refused a waiver. As provided for in the regulations, Mr. Baka suggested that Ms. Sultana pursue a U.S. Visa in order to gain entry into the Commonwealth. Ms. Sultana, apparently, refused to seek a U.S. Visa and instead had her husband focus his efforts on changing Mr. Baka's mind. Mr. Ahmed filed the instant lawsuit claiming the denial of his wife's waiver was in retaliation of his free speech.

### STANDARD OF REVIEW

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must assume the truth of all factual allegations and must construe them in the light most favorable to the non-moving party.[1] Legal conclusions, however, need not be taken as true "'merely because they are cast in the form of factual allegations.'"[2]

Thus, dismissal under Rule 12(b)(6) is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[3] Dismissal is warranted where the complaint lacks a cognizable legal theory or where the

---

[1] *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir.1996).

[2] *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)) (in parenthesis); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

[3] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.[4] In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged."[5]  "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."[6]  While only requiring a short and plain statement of the claim, FRCP 8(a)(2) is not such a liberal requirement that purely conclusory statements can survive a motion to dismiss under Rule and 12(b)(6).[7]

**OVERVIEW**

Generally, the government's decision on who may or may not enter the Commonwealth as a lawful immigrant is not reviewable by a Court.  There is a narrow exception to this rule— decisions that impact the constitutional rights of U.S. citizens are entitled to a narrow review by the courts.  In reviewing the decision, if the Government can show so that the visa denial was done on the basis of a facially legitimate and bona fide reason, the courts will not enquire further. In the case at bar, the Commonwealth presumptively excludes individuals from Bangladesh.  One way to avoid this exclusion and gain entry into the Commonwealth is to procure a U.S. Visa. Ms.Sultana chose not to do so.  Ms. Sultana, however, was properly excluded as a Bangladeshi national and, therefore, Mr. Ahmed's rights were not infringed.

**ARGUMENT**

---

[4] *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Doe I v. The Gap, Inc.*, No. CV-01-0031, 2001 WL 1842389 *1 (D.N.Mar. I. Nov. 26, 2001).

[5] *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[6] *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

[7] *Miller v. Continental Airlines*, 260 F.Supp.2d 931, 935 (N.D. Cal. 2003).

**I. The Commonwealth is owed deference on its immigration decisions.**

"'[T]he authority of the United States towards the CNMI arises solely under the Covenant.'"[8] Thus, although the United States' constitutional and statutory laws apply in the CNMI pursuant to the "COVENANT TO ESTABLISH A CNMI OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA" ("Covenant"), most federal immigration statutes do not apply. Instead, the CNMI enacts and enforces its own immigration laws in an effort to preserve the "CNMI's unique Chamorro and Carolinian ethnic and cultural heritage[.]"[9]

When analyzing the Commonwealth's immigration policies, "a court does not sit as a superlegislature, passing judgment on the wisdom of legislative policy decisions limiting immigration."[10] In reaching this conclusion, this Court has held that there is only a narrow judicial review of the Commonwealth's immigration policies because the policies clearly fall within the Commonwealth's plenary immigration power.[11] In other words, the Commonwealth is entitled to the same deference the federal government receives when courts examine federal immigration decisions.[12] This is so because "over no conceivable subject is the legislative power of Congress

---

[8] *Hillblom v. United States*, 896 F.2d 426, 429 (9th Cir.1990).

[9] *See Tran v. Comm. Of the Northern Mariana Islands*, 780 F.Supp 709 (D.N.M.I. 1991) citing COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA § 503(a), Act of Mar 24, 1976, Pub.L. 94-241, 90 Stat. 263, as amended by Pub.L. 98-213, § 9, 97 Stat. 1461, Pub.L. 99-396, § 10, 100 Stat. 840, reprinted in 48 U.S.C.A. § 1681 (West 1987).

[10] *See Tran*, 780 F.Supp at 713.

[11] *Id.*

[12] *Id.,* "narrow judicial review." *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50, 56 (1977) (upheld exclusion of father-illegitimate child relationship from immigration preferences); *Mathews v. Diaz*, 426 U.S. 67, 81-82, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478, 490-91 (1976) (upheld five year residency requirement for aliens' Medicare eligibility).

more complete than it is over" the admission of aliens.[13]

In analyzing the court's role in supervising a review of a visa decision, the Supreme Court held that "'[t]he power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.'"[14]  In the context of visa denials, courts refer to this deference both to Congress, which sets the "terms and conditions for admission of aliens," and to the Executive, which carries out the congressional policy, as the "doctrine of consular nonreviewability."[15]

"[I]t has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review."[16]  Courts have, however, identified a limited exception to the doctrine where the denial of a visa implicates the constitutional rights of American citizens.[17]  The exception is rooted in *Kleindienst v. Mandel,*[18] a suit brought by

---

[13] *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013, 1022 (1909)

[14] *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972).

[15] *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159-60 (D.C.Cir.1999) (stating that "[i]n view of the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts have applied what has become known as the doctrine of consular nonreviewability"); *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir.1986) (recognizing that "it has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review"); *Ventura-Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir.1981) (noting that "the doctrine of nonreviewability of a Consul's decision to grant or deny a visa."); *see also United States ex rel. Ulrich v. Kellogg*, 30 F.2d 984, 986 (D.C.Cir.1929) ( "We are not able to find any provision of the immigration laws which provides for an official review of the action of the consular officers in such case by a cabinet officer or other authority.").

[16] *Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970, 971 (9th Cir.1986).

[17] *See, e.g., Adams v. Baker,* 909 F.2d 643, 647-48 (1st Cir.1990); *Burrafato v. United States Dep't. of State,* 523 F.2d 554, 556-57 (2d Cir.1975); *Saavedra Bruno v. Albright,* 197 F.3d 1153, 1163 (D.C.Cir.1999).

[18] 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972),

LA/576564v1

American citizens challenging, on First Amendment grounds, the exclusion of a Belgian national who was an advocate of "world communism." The Supreme Court specifically noted that an unadmitted and nonresident alien himself had no right of entry, and that the case came down to the "narrow issue" whether the First Amendment right to "receive information and ideas" conferred upon the American citizens the ability to compel Mandel's admission.[19]

When the consular denial of a visa may impact the First Amendment rights of persons within the United States, courts have a limited ability to review that decision.[20] Thus, in *Mandel,* the Court acknowledged that First Amendment rights were implicated, but emphasized the longstanding principle that Congress has plenary power to make policies and rules for the exclusion of aliens.[21] Noting that Congress had delegated to the executive conditional exercise of this power with regards to certain classes of excludable aliens, the Court held that "when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."[22]

The Ninth Circuit has held that under *Mandel,* a U.S. citizen raising a constitutional challenge to the denial of a visa is entitled to a limited judicial inquiry regarding the reason for the decision.[23] As long as the reason given is facially legitimate and bona fide the decision will not be disturbed. In other words, the Executive's power to exclude an alien is unreviewable under the doctrine, even if exclusion might affect constitutionally protected interests of U.S. citizens, when

---

[19] *Mandel,* 408 U.S. at 762, 92 S.Ct. 2576.
[20] *See Mandel*, 408 U.S. at 770, 92 S.Ct. 2576.
[21] *Id.* at 765-66, 92 S.Ct. 2576.
[22] *Id.* at 770, 92 S.Ct. 2576.
[23] *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008).

the visa denial is done "on the basis of a facially legitimate and bona fide reason." [24]

In the case at bar, plaintiff has brought a First Amendment retaliation claim. In essence, Mr. Ahmed has brought suit alleging that his wife's visa was denied in an effort to infringe on Mr. Ahmed's First Amendment rights. If there is a facially bona fide reason for the denial, however, a court should not intrude on the decision. [25]

**II. CNMI immigration law allows for Ms. Sultana's exclusion**

The Commonwealth Entry and Deportation Act can be found at 3 CMC § 4301 *et seq*. Generally, the Commonwealth Code allows the Attorney General to exclude aliens who "pose a threat to the public health, safety or security of the Commonwealth."[26] By Mr. Ahmed's own allegations, Bangladesh has been on the Excluded Locations List[27] since 2004,[28] well before his wife applied for a visa. The reason Bangladesh, or any other country, is on the Excluded Location List is because the Commonwealth has had difficulty deporting individuals from these countries or verifying the documentation these individuals have provided. The Attorney General of the Commonwealth believes that individuals from the Excluded Locations List pose a threat to the Commonwealth. The Commonwealth, like the United States, is perfectly within its rights to exclude individuals from problem countries. Thus, the Legislature of the Commonwealth, the sole entity with responsibility for crafting CNMI immigration policy, has given the Attorney General the sole authority to exclude individuals from the Commonwealth. This authority is found in the regulations. Specifically, NMIAC § 5-40.3-315 provides that the:

> Attorney General may discontinue issuance of entry permits to the holders of passports issued by any country, or the residents of any state, province,

---

[24] *Id.* at 770, 92 S.Ct. 2576.
[25] *Id.* at 770, 92 S.Ct. 2576.
[26] *See* 3 CMC § 4322(h).
[27] Current Excluded Locations List attached hereto as Exhibit "A".
[28] Complaint Demand for Jury Trial at ¶ 23.

1 subsection, division or subdivision thereof, if the Attorney General determines:

(1) That the government of such country is unable to provide adequate information regarding backgrounds of persons embarking from that location;[29]

As Ms. Sultana is a Bangladesh national, there is a presumption in favor of excluding her, or any other Bangladeshi national. In order to avoid a denial, all Ms. Sultana had to do was apply for, and receive, a U.S. Visa.[30]

The regulations provide an exemption for "[a]ny alien with a valid United States entry visa which is valid for at least 60 days from the date of entry into the Commonwealth provided that the United States visa permits reentry back into the United States after entry and departure from the Commonwealth."[31] Notably, Mr. Ahmed alleges that suggesting Ms. Sultana seek a U.S. Visa was insulting and irrelevant.[32] This is an odd, and untrue, allegation. Had she been in the possession of a U.S. Visa, she would have been exempt from exclusion from the Commonwealth.[33] The Commonwealth is not in a position to research each and every applicant for a visa from an excluded country. The United States, on the other hand, routinely investigates individuals applying for visas. In an effort to "piggy-back" onto the U.S.'s ability and resources, the Commonwealth allows prospective visa applicants from excluded countries the opportunity to gain entry by acquiring a U.S. Visa. Ms. Sultana had this opportunity but chose not to take advantage of it.

**III. The First Amendment claim must be dismissed.**

Here, Mr. Ahmed asserts that he has a protected free speech interest that was allegedly violated by refusing to grant his wife a visa. Put another way, Mr. Ahmed believes the only

---

[29] *See* NMIAC § 5-40.3-315(a)(1) (Attached hereto as Exhibit "B").
[30] *See* NMIAC § 5-40.3-315(d)(3).
[31] *See id.*
[32] Complaint Demand for Jury Trial, at ¶ 30.
[33] *See* NMIAC § 5-40.3-315(d)(3).

LA/576564v1

reason his wife was denied a visa was, allegedly, because Mr. Baka and Mr. Grey retaliated against him for his activism on behalf of nonresident workers. In a normal lawsuit, these allegations would be enough to defeat a motion to Dismiss. As pointed out above, however, as long as the reason given for the denial is facially legitimate and bona fide the decision will not be disturbed.[34]

Without rearguing the preceding section, the Legislature of the Commonwealth has decided to exclude individuals from countries that pose a risk to the Commonwealth. The Attorney General has determined that individuals from Bangladesh pose a risk. This list was determined well before Ms. Sultana applied for entry into the Commonwealth. Individuals who are nationals of countries on the Exclusion List may circumvent this problem by applying for and receiving a U.S. Visa. Ms. Sultana failed or neglected to do this. Ms. Sultana was refused an entry permit because she is a national of Bangladesh, and Bangladeshi nationals are excluded from the Commonwealth. Thus, the Defendants can not only demonstrate that they denied Ms. Sultana's request for a facially legitimate and bona fide reason, but they also told her how to gain entry and she refused. That she refused to seek a U.S. Visa, however, is not the fault of the Defendants. Mr. Ahmed's claims must, accordingly, be dismissed.

**IV. Without an Underlying §1983 Violation, Plaintiff May Not Allege a §1985 (or 1986) Action on the Same Pled Facts. Therefore, Mr. Ahmed's remaining claims should be dismissed.**

As demonstrated above, Mr. Ahmed's rights were not violated because the Commonwealth can produce a facially legitimate and bona fide reason for Ms. Sultana's exclusion. Thus, he has failed to state a First Amendment Claim. The Ninth Circuit precludes plaintiffs from bringing conspiracy claims for violating constitutional rights when

---

[34] *Mandel,* 408 U.S. at 770, 92 S.Ct. 2576.

there is no underlying violation of a constitutional right.[35]  Moreover, because a valid 42 U.S.C. § 1986 claim only exists where there is a valid claim under section 1985,[36] this Court should dismiss the section 1986 claim as well.

**V. The Facts Alleged Do Not Show a Violation of Constitutional Rights.  Therefore, the Defendants are entitled to Qualified Immunity.**

The Supreme Court in *Saucier v. Katz*,[37] outlined a two-step approach to qualified immunity.  The first step requires the court to ask whether taking the facts "in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[38]  "If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[39]  In *Pearson v. Callahan*,[40] the Supreme Court held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[41]

As demonstrated frequently in earlier sections of the brief, Mr. Ahmed's rights were not violated because the Commonwealth can produce a facially legitimate and bona fide reason for Ms. Sultana's exclusion.  Therefore, as the Plaintiff's own alleged facts fail to show the Defendants violated any of Mr. Ahmed's constitutional rights, the Defendants are

---

[35] *Cassettari v. Nevada County, Cal.,* 824 F.2d 735, 739 (9th Cir.1987).

[36] *See McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir.1990).

[37] 533 U.S. 194 (2001)

[38] *Saucier*, 533 U.S. at 201.

[39] *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009)

[40] --- U.S. ----, ----, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

[41] *Id.* at 818.

-11-

immune and the suit must be dismissed. In this case, however, even if Mr. Ahmed could demonstrate a constitutional right was violated he cannot demonstrate that his rights were clearly established.

In determining whether Mr. Ahmed's rights were clearly established, the parties are to refer the court to cases on point.[42] As immigration in the Commonwealth is, for the time being, overseen by the Commonwealth,? it was reasonable for the Defendants to assume that they had the same broad and sweeping powers that their counterparts in the United States have. Moreover, there are no cases in the Commonwealth interpreting, or more importantly, limiting the Commonwealth's immigration powers. Thus, it is clear Mr. Ahmed's rights were not clearly established, and this court should find that defendants have qualified immunity.

## CONCLUSION

WHEREFORE, based upon the foregoing, this honorable Court should grant, in whole or in part, Attorney General Defendants' Motion to Dismiss and that all costs be taxed to Mr. Ahmed.

>
> Respectfully submitted
> September 21, 2009
> OFFICE OF THE ATTORNEY GENERAL
>
> _____/S/_____
> Braddock Huesman, F#0367

CERTIFICATE OF SERVICE

I certify that a copy of Defendants' Motion to Dismiss was served on Mark Hanson who is the attorney in charge for plaintiff, Mr. Ahmed, and whose address is PMB 738, PO Box 10000,

---

[42] *See generally Brosseau v. Haugen,* 543 U.S. 194, 199-200, 125 S.Ct. 596, 599 - 600 (2004) (The parties point us to only a handful of cases relevant to the "situation [Brosseau] confronted").

1 | Saipan, MP 96950, (670) 233-8600, by electronic filing on September 21, 2009.

                                                    _____*/S/*_____
                                                    Braddock Huesman

LA/576564v1

-13-